AO 91 (Rev. 11/11) Criminal Complaint

Case 1:25-mj-00094-BAM   Document 1   Filed 08/27/25   Page 1 of 10

FILED
Aug 27, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

United States of America
v.

STEVE PAUL GARCIA,

*Defendant(s)*

Case No. **1:25-mj-00094-BAM**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 26, 2025 in the county of Fresno in the Eastern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 841(a)(1), (b)(1)(A) | Possession with intent to distribute over 500 grams of methamphetamine |
| | Maximum Penalties: 10 yrs to life in prison, $10M fine, 5 yr to life supervised realease, $100 special fee |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Ryan Jensen, attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

*Complainant's signature*

Ryan Jensen, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by email transmission and telephone.

Date: 8/27/25

*Judge's signature*

City and state: Fresno, California   Hon. Barbara A. McAuliffe, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>STEVEN PAUL GARCIA,<br><br>  Defendant. | CASE NO.<br><br>**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT** |

I, Ryan T. Jensen, Special Agent, Drug Enforcement Administration, United States Department of Justice, being duly sworn, do hereby declare and state:

## I. INTRODUCTION

### A. Purpose of Affidavit.

1. I make this affidavit to support a criminal Complaint charging **Steven Paul GARCIA** with possession of a controlled substance with the intent to distribute, in violation of Title 21, United States Code, Section 841. The facts and information contained in this affidavit are based on my personal knowledge of the investigation, investigative reports, notes, conversation with other State and local law enforcement officials. This affidavit is not intended to convey each and every fact of the investigation. It is only intended to establish probable cause to support an arrest warrant and Complaint charging the above listed individual with the above listed offenses.

### B. Affiant's Background.

2. I am a Special Agent (SA) of the United States Department of Justice, Drug Enforcement Administration (DEA). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with the Drug Enforcement Administration (DEA) since May 2012 and am presently assigned to the DEA District Office in Fresno, California. I have successfully completed a nineteen (17) week DEA

1

Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846. I have been the primary investigating agent in more than 30 federal narcotics investigations and have assisted in excess of 100 federal narcotics investigations. These investigations have led to the seizure of narcotics and the arrests of numerous individuals. I have used various methods of investigation including but not limited to physical surveillance, electronic surveillance, phone toll analysis, records research, executed search warrants, trash searches, photo and video analysis, interviews of confidential informants, defendants and witnesses. I have discussed with law enforcement officers, cooperating defendants, and informants, the methods and practices used by narcotics distributors. I am a law enforcement officer as defined by federal statutes.

3. In addition, I have completed various training provided by the DEA and local law enforcement agencies, including, but not limited to training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to phencyclidine (PCP), methamphetamine, heroin, cocaine, marijuana and fentanyl. This training involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances as well as its precursors and chemicals used in the manufacturing process. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking. I have assisted on the execution of multiple federal narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics.

4. I have participated in narcotics investigations either as a case agent or in a supporting role. I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. Additionally, I have participated in many aspects of drug investigations including, but not limited to, undercover operations, conducting physical and electronic surveillance, and arrests. I have conducted and been involved in numerous investigations regarding the unlawful manufacture, possession, distribution, and transportation of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 841(a)(1), 841(c)(2),

2

843, and 846 and the State of California Health and Safety Code.

5. Unless otherwise indicated here, I believe the information provided to me by others to be reliable. In those instances where I assert an opinion or belief with respect to the facts alleged here, that opinion or belief is based on my training and experience as set forth above, along with my knowledge of the investigation and any other specific factors I submit in connection with a particular assertion.

### I. APPLICABLE LAW

6. Title 21, United States Code, Section 841(a)(1) prohibits any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. § 841(a)(1).

### II. SUMMARY OF PROBABLE CAUSE

7. On August 26, 2025, Fresno Sheriff's deputies stopped Steve Paul Garcia for traffic violations in Fresno County. DEA and the Fresno County Sheriff's Office have been investigating Garcia following a June 2025 arrest of a drug trafficker who was communicating with Garcia prior to picking up twenty pounds of methamphetamine. During the stop, Garcia told deputies he had "twenty" "Chris" in the car, which deputies believed was slang for crystal methamphetamine. While searching Garcia's car, deputies found and seized approximately 20 pounds of suspected methamphetamine.

### II. PROBABLE CAUSE

**A. In June 2025, Investigators Seized 20 Pounds of Methamphetamine from an Individual Working with Garcia.**

8. On June 3, 2025, a Fresno County Sheriff's Office ("FCSO") Deputy Guzman pulled over Javier PACHECO Torres, driving a GMC Acadia, for failing to display a front license plate and for having a cracked front windshield on Interstate 5. During the stop, PACHECO consented to the deputy searching his vehicle and to use a narcotics detection K9 during the search. During the search, the drug K9 made a positive alert to the odor of narcotics on the vehicle. Deputies then found and seized approximately 20 pounds of methamphetamine. Deputies also located and seized a Samsung cellphone on PACHECO's person and a black iPhone near the driver's side door. Deputies subsequently arrested PACHECO, who is currently facing federal charges in the Eastern District of California for violations of Title 21 USC 841(a)(1).

3

9. Following PACEHCO's arrest, Dep. Guzman advised PACHECO of his Miranda Rights and PACHECO indicated he understood and agreed to answer questions. PACHECO said that earlier that day, he had met an unknown male, at a gas station in the City of Bakersfield, California. PACHECO said that after he met the man at the gas station, the man took PACHECO's GMC Acadia away from the gas station while PACHECO waited. According to PACHECO, the unknown man returned a short time later and returned the vehicle to PACHECO.

**B.** <u>Investigators Discovered Communications on PACHECO's Phones with Steve GARCIA **Before PACHECO's** Arrest and Possession of the Methamphetamine.</u>

10. Following PACHECO's arrest, Dep. Guzman obtained a state search warrant for PACHECO's phones, signed by Fresno County Superior Court Judge John Vogt. Dep. Guzman reviewed the phones and discovered a WhatsApp conversation between PACHECO and a Mexican Telephone number 52-7445711493. During this conversation, Dep. Guzman observed a message containing contact information for "steve garcia" with a telephone number of "661-314-4249" (herein after referred to as "Target Telephone 1", or "TT-1"), and a message that said: "this is the number of the guy."[1]

11. Dep. Guzman also observed a separate WhatsApp conversation between PACHECO and TT-1 which was listed by phone contact as "steve Garcia." The conversation between PACHECO and "steve garcia" started on June 3, 2025, at approximately 11:02 AM, which was approximately three hours before deputies stopped and arrested him on Interstate 5.

12. In the conversation, Dep. Guzman observed an exchange between "steve garcia" and PACHECO which contained the address "500 Norris rd," and a message from PACHECO that indicated that he would be "there"[at the address] in 23 minutes. Dep. Guzman searched the address using open source queries and observed that 500 Norris Road, Bakersfield, CA, is the address to a Mobile Mart Gas Station. Based on the information from his review of PACHECO's phones, Dep. Guzman obtained a state precise location data search warrant on TT-1, signed by Fresno County Superior Court Judge Tyler Tharpe, on August 18, 2025.

---

[1] This conversation took place in Spanish, which Dep. Guzman speaks. The actual words used during the conversation were "este es el num del muchacho" which translates to "this is the number of the guy".

### C. Investigators Identified Steve Paul GARCIA as the Owner of TT-1.

13. Between August 18, 2025, and August 26, 2025, FCSO and DEA investigators conducted intermittent electronic and physical surveillance of the precise location data associated with "steve garcia's" phone, TT-1. During these surveillance operations, investigators observed that the phone was periodically located in the vicinity of Airport Drive and Norris Road in Bakersfield. Additionally, investigators observed that the GPS Precise location Data associated with TT-1 was in this vicinity during the nighttime hours, which, based on my training and experience, would typically be the hours a person would be at home.

14. Based on this information, investigators believed that the user of TT-1 lived in the vicinity of Airport Drive and Norris Road. During this time frame, Dep. Guzman conducted a CLEAR2 query of TT-1. This query yielded a Post Office Box address (PO Box 30221) in Bakersfield associated with the number. Dep. Guzman then conducted a CLEAR Query of PO Box 30221 which showed it belonged to a user of Steve Paul Garcia. A CLEAR query of Steve Paul Garcia yielded a physical address of 438 Francis St, Bakersfield, CA. This address is within the radius range of the GPS Precise Location Data pings received by investigators. Additionally, investigators retrieved a California DMV photograph of Steven Paul **GARCIA** and began conducting physical surveillance of the Francis St. address.

15. On August 19, 2025, while conducting physical surveillance, Dep. Guzman drove by 438 Francis St, Bakersfield, CA (herein after referred to as "**GARCIA's** Residence"), and observed a heavyset Hispanic Male with a bald head on the front porch of the residence. At that time, Dep. Guzman was able to positively identify **GARCIA** as the man on the porch, based on a California DMV photograph of **GARCIA**.

16. During the same surveillance operation, Dep. Guzman observed a white Acura SUV bearing CA Plate #7DZH462 parked in the driveway of the Francis Street Residence. Det. Vito conducted queries of the CA DMV database and determined that the Acura was registered to Steve P Garcia at PO Box 30221, Bakersfield, CA. On the same date, investigators observed the GPS pings associated with TT-1 begin moving away from **GARCIA's** Residence. Shortly after, investigators drove by **GARCIA's**

---

[2] CLEAR is commercial database that maintains name, address and telephone information based upon information derived from various credit companies.

Residence and observed the Acura was no longer parked in the driveway and the gate to the driveway was open.

17. A short time later, investigators observed the Acura return to the residence but were not able to confirm the driver of the vehicle. A short time later, investigators continued to monitor the GPS Precise Location Data of TT-1, which showed the phone located in its original location in the vicinity of **GARCIA's** Residence.

18. On August 20, 2025, investigators observed TT-1 in the Los Angeles area. It returned to Bakersfield on August 22, 2025. I know based on my training and experience that drug traffickers in the Central Valley often travel to Los Angeles and Southern California to pick up large quantities of controlled substances and drive back to then distribute it in the Central Valley. I believe, based on my training and experience, and personal knowledge gained from this investigation, that **GARCIA** was in Los Angles to picking up additional supplies of controlled substances.

### D. Investigators Stopped GARCIA and Seized 20 Pounds of Methamphetamine.

19. On August 26, 2025, at approximately 12:00 PM, Dep. Guzman observed that TT-1 was travelling northbound from Bakersfield on California State Route 99 ("SR 99") in Tulare County. At approximately 12:15 PM, Det. Chris Centeno observed **GARCIA's** Acura travelling northbound on SR 99 in Fresno County. Investigators observed that the Acura's front passenger-side window was so tinted that he could only see a silhouette of the driver, in violation of California Vehicle Code section 26708. Investigators followed **GARCIA's** Acura as it travelled northbound through Fresno, until Dep. Guzman conducted a traffic stop of the vehicle in a marked FCSO patrol vehicle in the vicinity of the In-N-Out Restaurant located at 5106 W. Shaw Ave, Fresno, CA for improper front window tint.

20. During the stop, Dep. Guzman identified **GARCIA** as the driver. He also identified a passenger who stated she was **GARCIA's** girlfriend. Dep. Guzman advised **GARCIA** the reason for the stop (illegal front window tint), and requested **GARCIA** step out of the vehicle in order for Dep. Guzman to speak to him outside the presence of his girlfriend. **GARCIA** indicated that they were driving to Stockton to visit his mother for her birthday. **GARCIA's** girlfriend, however, told investigators separately that they were going to Stockton to visit a friend. These inconsistent statements suggested to investigators

that **GARCIA** or his girlfriend were lying to conceal the true purpose of their trip.

21.     Dep. Guzman asked for consent to search **GARCIA's** Acura, to which **GARCIA** denied consent. Dep. Guzman told **GARCIA** that he had a narcotics detection K9 and asked permission from **GARCIA** to deploy the K9 to search the Acura, and **GARCIA** consented. Before he deployed his K9, Dep. Guzman asked **GARCIA** if there were any drugs in the car. **GARCIA** responded, saying: "Chris." Dep. Guzman then asked how much "Chris"[3] and **GARCIA** said "twenty." Based on my training and experience, I know drug traffickers use slang and coded language to refer to narcotics. I also know, based on my training and experience, that "Chris" is used as slang for "crystal," as in "crystal methamphetamine." When **GARCIA** told Dep. Guzman there was "twenty" "Chris" in the car, Dep. Guzman believed that there was crystal methamphetamine in the car.

22.     While Dep. Colegio was completing the citation for **GARCIA**'s improper window tint, Dep. Guzman deployed his narcotics K9 to GARCIA's Acura. The K9 quickly gave Dep. Guzman a positive response to the odor of narcotics on the rear passenger door of the vehicle. At that time, Dep. Guzman opened the rear passenger door, looked between the second and third row seats, and observed three plastic bags containing twenty separately wrapped packages containing a white crystalline substance, which was subsequently seized by Dep. Guzman as suspected methamphetamine. I have spoken to Dep. Guzman about the suspected methamphetamine and his training and experience (See footnote 3). Dep. Guzman told me that, based on his training and experience, he believed the white crystalline substance individually wrapped contained methamphetamine. He also believed, based on his training and

---

[3] Dep. Guzman has been a Peace Officer with the Fresno County Sheriff's Office since January, 2018, and has been assigned to the Fresno County Sheriff's Office narcotics unit since May, 2021. As part of his training and experience, Dep. Guzman has participated in and been the lead investigator on multiple state narcotics investigations including the distribution of cocaine, methamphetamine, fentanyl, marijuana and other illicit drugs. Dep. Guzman has been trained in, and has first hand experience with a variety of investigative methods including the application of search warrants, surveillance, debriefing of informants and cooperating defendants, the questioning of witnesses, and other investigative means. Dep. Guzman has personally observed, both as a Detective with the narcotics unit as a patrol deputy, methamphetamine and is familiar with its appearance, odor, texture, packaging material and slang terms for methamphetamine used by narcotics users and distributors. Dep. Guzman is also a certified narcotics detection K9 handler and has been so since November, 2021. Based on his training and experience, when GARCIA told him there was "Chris" in the car and there were "20", Dep. Guzman believed GARCIA was referring to crystal methamphetamine and that "20" referred to 20 pounds of methamphetamine.

experience, that there was approximately 20 pounds of suspected methamphetamine based on **GARCIA's** comments that there were "twenty" "Chris" in the car, the weight of each individual package, and because there were 20 packages. **GARCIA** and his girlfriend were subsequently detained.

23. Following the stop, Dep. Guzman advised **GARCIA** of his Miranda Rights, to which GUZMAN indicated that they understood and agreed to answer questions. During the interview **GARCIA** stated that he was being paid $1,500 to transport the methamphetamine from Bakersfield to Stockton.

24. The suspected methamphetamine was booked into the FCSO evidence locker. On August 27, 2025, DEA Task Force Officer Dan Larralde took possession of the twenty packages of suspected methamphetamine to transport them to the DEA evidence locker for safekeeping. See Figure 1. He performed a presumptive drug test on the substance in one of the packages and the test returned a positive result for methamphetamine, a controlled substance. TFO Larralde also weighted the suspected methamphetamine, which had an approximate gross total weight of 9.9 kilograms (21.83 pounds). DEA agents intend to transport the drugs to a DEA laboratory for further testing.

*Figure 1: Packages of Suspect Methamphetamine Seized from Garcia's Car.*



8

III. **CONCLUSION**

25. Based on the above information, I believe probable cause exists that **Steven Paul GARCIA** possessed methamphetamine with intent to distribute, in violation of Title 21, United States Code, Section 841.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

*Ryan T. Jensen*
Ryan T. Jensen, Special Agent
United States Drug Enforcement Administration

This Affidavit was submitted to me by email/pdf and attested to me as true and accurate by telephone, consistent with Fed. R. Crim. P. 4.1, and 41(d)(3) on ____8/27/25____.

*B. McAuliffe*
Hon. Barbara A. McAuliffe
United States Magistrate Judge

Approved as to form.

/s/ *Cody Chapple*
CODY CHAPPLE
Assistant United States Attorney

9